**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RASHONDA LEICOLE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-01294-AGF |
| | ) | |
| LEE DUDEK,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Rashonda Leicole Brown was not disabled, and thus not entitled to supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 12-1), and in Defendant's Statement of Additional Material Facts (ECF No. 15-1), both of which have been admitted by the

---

[1] Lee Dudek became the Acting Commissioner of Social Security in February of 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Lee Dudek should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

opposing party (ECF Nos. 15-1 & 16). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on September 30, 1972, protectively applied for benefits on August 27, 2020. She alleged disability beginning May 8, 2019, at age 46, due to high blood pressure, carpal tunnel syndrome, nerve damage in the right hand, hand/wrist/arm problems, chronic obstructive pulmonary disease ("COPD"), insomnia, bipolar disorder, manic depression, and posttraumatic stress disorder ("PTSD"). Tr. 91, 239, 246. Plaintiff's application was denied at the administrative level and on reconsideration, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A telephonic hearing was held on August 17, 2022. Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. By decision dated January 4, 2023, the ALJ found that Plaintiff had the severe impairments of lupus, polyneuropathy, degenerative changes to the cervical and lumbar spine, metatarsalgia, major depressive disorder, generalized anxiety disorder, bipolar disorder, and PTSD.

The ALJ concluded that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations. The ALJ noted that the medical evidence of record did "not document signs, symptoms, and/or laboratory findings indicating any impairment or

2

combination of impairments severe enough to meet the criteria of any listed impairment," and that "[n]o source designated by the Commissioner to establish equivalency has mentioned findings or rendered an opinion that [Plaintiff's] impairments, singly or in combination, medically equaled the criteria of any listed impairment."   Tr. 31.

In making this finding, the ALJ specifically considered, as relevant here, Listing 11.14 (peripheral neuropathy).  *Id.*   The ALJ noted that this listing required, and the record here lacked, evidence of either disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or marked limitation in physical functioning, and in one of the following: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself.  *Id.*

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in the Commissioner's regulations, with the following exceptions:

> [She] can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, and frequently balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to hazards such as moving machinery and unprotected heights. [She] can perform only simple, routine and repetitive tasks, requiring only simple work-related decisions, with few changes in the routine work setting and no more than occasional interaction with supervisors and co-workers and rare contact with the general public.

Tr. 33.

In making these findings, the ALJ considered the opinion evidence of various

3

medical professionals and providers.   Specifically, the ALJ considered the opinion provided by Plaintiff's treating neurologist, Paul Santiago, M.D., who completed a physical assessment in October of 2022.   Dr. Santiago indicated by checkbox and fill-in-the-blank form, that Plaintiff was diagnosed with cervical spondylosis with myelopathy causing dizziness and drowsiness, that her condition would "constantly" interfere with the attention and concentration required to perform simple work-related tasks, that she could walk approximately two city blacks without significant pain but could not walk or stand more than two hours or sit more than six hours in an eight-hour work day, that she would need 15-minute breaks in work every hour and would miss work more than four times per month, that she could only occasionally lift up to 10 pounds and never more than 20 pounds, and that she was 50% limited in handling and fingering and could never reach with either arm.   Tr. 609-10.

    The ALJ found that Dr. Santiago's opinion was not persuasive because it provided little supportive explanation and was inconsistent with other evidence in the record, including treatment records indicating good to normal strength and sensation of the bilateral upper and lower extremities throughout the relevant time period and through the weeks following Plaintiff's October 2022 back surgery.   Tr. 36.

    The ALJ also considered the opinion evidence from agency consultative psychologist, Stephanie Bono, Ph.D., who examined Plaintiff in March of 2021.   During her examination, Dr. Bono noted that Plaintiff ambulated slowly without apparent gait disturbance; did not display any unusual behaviors; sat still in her chair throughout the

evaluation; made appropriate eye contact; was polite and cooperative with appropriate social skills; had normal speech despite slightly slurring her words; presented with no deficits in receptive or expressive language; was not in acute emotional distress; was fully oriented; and displayed thought processes that were logical, linear, and goal directed. Tr. 450-51. However, Dr. Bono noted that Plaintiff "did appear tired, particularly at the end of the evaluation, when she had trouble keeping her eyes open." Tr. 450.

Based on her examination and review of the medical records, Dr. Bono opined that Plaintiff had moderate limitations in most areas of mental work-related functioning, but a marked limitation in concentration, persistence, and pace. Tr. 448-54. In support of her opinion that Plaintiff had a marked limitation in concentration, persistence, and pace, Dr. Bono stated that Plaintiff "reported it is sometimes difficult for her to concentrate on or complete tasks," and that Plaintiff "seemed very fatigued by the end of the evaluation and had difficulty keeping her eyes open." Tr. 451.

The ALJ found Dr. Bono's opinion only partially persuasive. Tr. 36. The ALJ noted that Dr. Bono's opinion was supported by explanation and that her findings of moderate limitations were generally consistent with other evidence of record. However, the ALJ found that Dr. Bono's opinion that Plaintiff was markedly limited in concentration, persistence, and pace was inconsistent with the record. The ALJ reasoned that Dr. Bono did not define the terms "moderate" and "marked" within her opinion; and that Dr. Bono's basis for the marked opinion was that Plaintiff appeared drowsy and tired

5

at the time of the examination but that Dr. Bono did not indicate whether the drowsiness was caused by Plaintiff's mental impairments or other reasons, such as lack of sleep. Finally, the ALJ noted that, in the absence of corroborating evidence, this one-time examination was insufficient to show that Plaintiff's concentration was markedly impaired where consideration of the record as a whole failed to support such a finding. Tr. 36.  In making such statement, the ALJ cited to portions of the record indicating generally normal mental status examination findings.  *Id.*

Next, the ALJ found that Plaintiff's capacity for performing past relevant work was not material because there was insufficient information about her past work and because all potentially applicable Medical-Vocational Guidelines as defined in the Commissioner's regulations would direct a finding of "not disabled" given the Plaintiff's age, education, and RFC.

However, the ALJ found that Plaintiff could perform certain unskilled light jobs listed in the Dictionary of Occupational Titles ("DOT") (cleaner, hand packer, and production worker), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on August 24, 2023.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that the ALJ erred by failing to (1) adequately evaluate the opinion of agency consultative psychologist Dr. Bono, particularly Dr. Bono's opinion that Plaintiff was markedly impaired in concentration, persistence, and pace; (2) adequately evaluate the opinion of treating neurosurgeon Dr. Santiago; and (3) properly develop the record when relying on state agency consultant findings that no listing was met or medically equaled, when those consultants did not have later-acquired evidence, such as records related to Plaintiff's back surgery, Dr. Santiago's opinion regarding Plaintiff's physical impairments, and Dr. Bono's opinion regarding Plaintiff's mental impairments. Plaintiff asks that the ALJ's decision be reversed and that benefits be awarded or the case be remanded for further proceedings.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent

positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 416.920, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Evaluation of Medical Opinion Evidence**

"When assessing the claimant's [RFC], the ALJ must weigh the various medical opinions in the record and resolve any conflicts among them." *Bradford v. O'Malley*, 104 F.4th 1055, 1059 (8th Cir. 2024) (citation omitted). Under the recently revised regulations, "treating physicians are no longer entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citation omitted). Rather, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the

9

source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "[T]he first two factors—supportability and consistency—are the most important." *Austin*, 52 F.4th at 728 (citations omitted).

Here, the ALJ performed an independent review of the medical record as required, including the objective medical evidence of prior medical procedures, physical examinations, treatment, consultative examinations, and diagnoses, along with Plaintiff's subjective complaints of disabling symptoms and limitations. The ALJ then properly evaluated the persuasiveness of each medical opinion by considering the above-noted factors.

The ALJ did not give controlling weight to any single medical opinion but instead considered the views of the examining and non-examining agency physicians, which taken together, supported the RFC assessment. The ALJ reasonably concluded that Dr. Santiago's findings of more extreme physical limitations in his one-and-a-half page form, such as his fill-in-the-blank finding that Plaintiff could never reach and only occasionally finger or handle, was not supported by any explanation and was inconsistent with the medical records consistently indicating good to normal strength and sensation of the upper and lower extremities, including, as the ALJ noted, within the weeks after Plaintiff's October 2022 back surgery. Tr. 340, 367, 399, 471, 480, 488, 493, 504, 568, 574, 597, 604, 2737-39.

Dr. Santiago did not explain his more severe physical limitations or cite to any

10

medical evidence support of them.  Rather, his opinion consisted primarily of conclusions and checkmarks without further explanation.  As the Eighth Circuit has held, a medical checkbox opinion like Dr. Santiago's is "entitled to relatively little evidentiary value on its face" when it is conclusory and "'cite[s] no medical evidence, and provide[s] little to no elaboration.'"  *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (citing *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) and *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)).  It was not error for the ALJ to rely more heavily on other medical opinions and evidence in the record that collectively supported the RFC assessment.

The ALJ likewise properly discounted—though only partially—Dr. Bono's opinion following her consultative mental examination of Plaintiff.  Notably, the ALJ did not wholly discredit Dr. Bono's opinion but, rather, found persuasive Dr. Bono's assessment of Plaintiff's generally moderate mental limitations.  But the ALJ reasonably discredited Dr. Bono's single finding of a marked impairment in concentration, persistence, and pace.  The only support Dr. Bono offered for this finding was Plaintiff's subjective reports regarding her difficulty completing tasks and Plaintiff's fatigue at the end of the evaluation.  But Dr. Bono did not state or indicate that Plaintiff's fatigue was due to her mental impairments, as opposed to other reasons such as the ALJ's example of a simple lack of sleep.  Indeed, Dr. Bono noted during her own examination that Plaintiff's thought content was normal and her thought processes were logical, linear, and goal-directed.  Tr. 451.  Further, in her own function report, Plaintiff stated that

11

although she could only "somewhat" follow written and spoken instructions, she could finish what she started, and she did not indicate any difficulty completing tasks or with concentrating. Tr. 267. The ALJ thus reasonably found that Plaintiff's symptoms did not cause more than a moderate limitation in concentration, persistence, and pace.

Again, the ALJ did not wholly discount the mental and physical limitations set forth in the medical opinion evidence. Rather, the ALJ carefully compared those limitations to the record as a whole and incorporated into Plaintiff's RFC those limitations that were consistent with the record. This is all the ALJ was required to do, and the Court cannot say that the ALJ's conclusion was outside the zone of choice.

**Step Three Finding Regarding Listing 11.14**

The ALJ was responsible for deciding the ultimate legal question of whether a listing was met or medically equaled. *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 978–79 (8th Cir. 2003) (citation omitted). In determining whether an impairment medically equals a listing, the ALJ will "consider all evidence in [the claimant's] case record about [her] impairment(s) and its effects on [her] that is relevant to this finding," and will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 416.926(c).

The ALJ satisfied these requirements by relying on the record as a whole, including the opinions of state agency consultants, to find that Plaintiff's impairments did not meet or medically equal any listing. Tr. 31. In challenging this finding, Plaintiff "bears the burden at step three of showing that [her] impairments meet or equal an

impairment described in the listings." *Cronin v. Saul*, 945 F.3d 1062, 1066–67 (8th Cir. 2019) (citation omitted). "To establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one, most similar, listed impairment." *Id.* at 1067.

Plaintiff acknowledges that state agency physicians found that she did not meet or medically equal any listing, but she argues that the ALJ should have further developed the record on this issue because the agency physicians did not have the opportunity to review evidence of her back surgery or the opinions of Dr. Bono (who found Plaintiff had a marked impairment in concentration, persistence, and pace) and Dr. Santiago (who found that Plaintiff had severe physical impairments). Plaintiff argues that these additional pieces of evidence demonstrate that Listing 11.14 for peripheral neuropathy was met because they demonstrate that Plaintiff had a marked limitation in physical functioning and a marked limitation in one of the applicable areas of mental functioning—namely, the area of concentration, persistence, or pace.

However, an ALJ is not required to obtain a new medical evaluation where, as here, an agency physician has already addressed the issue of equivalency. *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 978–79 (8th Cir. 2003) (citing Social Security Ruling 96–6p [2002 Supplementary Pamphlet] Soc. Security Reporting Service: Rulings (West) at 131). Rather, an ALJ must obtain an updated medical opinion from a medical expert only when either: (1) no additional medical evidence is received, but the ALJ finds that the record suggests a judgment of equivalence may be reasonable; or (2) additional

13

medical evidence is received that the ALJ believes may change the state agency consultant's opinion that a claimant's impairments are not equivalent to an impairment in the listings.   SSR 96–6P, 1996 WL 374180 at *3-4.

Plaintiff appears to invoke the second exception.   But there was no reason for the ALJ to obtain updated medical evidence under this exception because the additional evidence that Plaintiff highlights would not have changed the ALJ's opinion regarding whether the Listing 11.14's criteria were satisfied.   Specifically, the only additional evidence pointed to by Plaintiff is her October 2022 back surgery and treatment thereafter, Dr. Santiago's finding of severe physical limitations, and Dr. Bono's finding of a marked impairment in concentration, persistence, and pace.   But the ALJ explicitly considered both sets of opinion evidence and found that Dr. Santiago's findings of severe physical limitations and Dr. Bono's finding of marked impairment in concentration, persistence, and pace were not persuasive.   And as noted above, substantial evidence supports the ALJ's conclusions in this regard.

Further, the ALJ explicitly considered the records of Plaintiff's October 2022 back surgery and treatment thereafter, and found that, if anything, these records indicated generally normal strength and sensation of the upper and lower extremities, as opposed to marked physical limitations.   In short, nothing in the record indicates that the ALJ should have believed that medical evidence post-dating the state agency opinions would have changed the state agency's initial opinions.   Thus, it was unnecessary for the ALJ to obtain an updated medical opinion for a medical expert, and the ALJ's determination

14

that Plaintiff's condition did not meet or equal a listed impairment was supported by substantial evidence. *Cf. Karlix v. Barnhart*, 457 F.3d 742, 746–47 (8th Cir. 2006) (holding that an ALJ's failure to elaborate on his conclusion that the record did not demonstrate a plaintiff meet or equaled any listed impairment was not erroneous where the record supported that conclusion).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 20th day of February, 2025.